[Cite as *McMahan v. McMahan*, 2015-Ohio-5054.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SHELBY COUNTY

TIFFANY I. MCMAHAN,

    PLAINTIFF-APPELLEE,           CASE NO. 17-15-06

    v.

DAVID T. MCMAHAN,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Shelby County Common Pleas Court
Domestic Relations Division
Trial Court No. 13DV000062

**Judgment Affirmed**

**Date of Decision: December 7, 2015**

APPEARANCES:

    *David T. McMahan*, Appellant

    *Timothy S. Sell for* Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, David T. McMahan ("David"), pro se, appeals the May 4, 2015 decision of the Shelby County Court of Common Pleas, Domestic Relations Division granting divorce from the plaintiff-appellee, Tiffany I. McMahan ("Tiffany"). For the reasons that follow, we affirm.

{¶2} David and Tiffany were married on April 12, 2008. (Doc. No. 1). Tiffany filed a complaint for divorce on April 2, 2013. (*Id.*). Although this was a second marriage for each of them, and while each had children from their previous marriages, one child ("M.M.") was born as issue of this marriage. (*Id.*). Tiffany filed motions on April 2, 2013 requesting that the trial court issue ex parte orders: (1) that she have exclusive use of the 2002 Chevrolet Venture; (2) that she have exclusive use of the marital residence; (3) that she have temporary custody of M.M. and that David pay Tiffany temporary child support for M.M.; and (4) granting a temporary restraining order against David. (*See* Doc. Nos. 9, 11, 13, 15). The trial court issued the ex parte orders requested by Tiffany on April 3, 2013. (Doc. Nos. 18, 19, 20, 21).

{¶3} David, pro se, filed a motion on April 10, 2013 requesting that the trial court order Tiffany to be tested for drugs. (Doc. Nos. 28). David then retained counsel and on April 15, 2013 filed his answer and counterclaim. (Doc. No. 36). On April 15, 2013, David filed an objection to the trial court's April 3, 2013 ex

parte orders granting Tiffany temporary custody of M.M. and ordering David to pay temporary child support. (Doc. No. 37). That same day, David filed motions requesting that the trial court issue ex parte orders: (1) protecting the interests of M.M., (2) a temporary restraining order against Tiffany, (3) that he be granted temporary custody of M.M. and that Tiffany pay child support. (Doc. Nos. 38, 40, 42). The trial court on April 16, 2013 issued the ex parte orders protecting M.M.'s interests granting temporary restraining order against Tiffany. (Doc. Nos. 53, 54).

{¶4} Tiffany filed her reply to David's counterclaim on April 18, 2013. (Doc. No. 56).

{¶5} On June 4, 2013, the magistrate of the trial court issued "Agreed Temporary Order of Custody and Child Support," granting temporary custody of M.M. to Tiffany, granting David parenting time with M.M., and ordering David to pay temporary child support. (Doc. No. 64).

{¶6} On June 11, 2013, David filed a motion for shared parenting and submitted a "Proposed Shared Parenting Plan." (Doc. Nos. 78, 79).

{¶7} On September 11, 2013, David filed a "Notice of Filing Bankruptcy." (Doc. No. 81). On September 13, 2013, Tiffany filed a "Notice of Bankruptcy Filing." (Doc. No. 83).

{¶8} On December 23, 2013 and February 27, 2014, David filed motions to continue the final divorce hearing because he was incarcerated. (Doc. Nos. 88,

92). On March 5, 2014, the magistrate denied David's February 27, 2014 motion requesting a second continuance of the final divorce hearing. (Doc. No. 94).

{¶9} After a hearing on July 9-10 and 14, 2014, the magistrate issued his decision on August 7, 2014. (Doc. No. 134).

{¶10} On August 12, 2014, David filed a motion requesting extended parenting time with M.M. (Doc. No. 138). The magistrate granted David's motion that same day. (Doc. No. 139). On August 18, 2014, David's counsel filed a motion to withdraw as counsel, which the trial court granted on August 19, 2014. (Doc. Nos. 143, 144).

{¶11} On August 19, 2014, David, pro se, filed his objections to the magistrate's decision—namely, the magistrate's "findings, conclusions, and recommendations concerning the best interest of the parties' minor child * * *, regarding parental rights and responsibilities." (Doc. No. 149). After a number of extensions, David filed his memorandum in support of his objections to the magistrate's decision on January 27, 2015. (Doc. No. 177). Tiffany filed her memorandum in opposition to David's objections to the magistrate's decision. (Doc. No. 183). The trial court adopted "all of the magistrate's decision regarding the divorce and the ending of the parties' marriage that do not deal with the allocation of parental rights and responsibilities," overruled David's objections to the magistrate's decision, and, after an independent analysis, adopted the

"magistrate's decisions on allocation of parental rights and responsibilities including residential care, child support, and health care," but ordered parenting time in accordance with Loc.R. 22. (Doc. No. 184).

{¶12} On May 4, 2015, the trial court issued a final divorce decree. (Doc. No. 188).

{¶13} David filed his notice of appeal on May 14, 2015. (Doc. No. 197). He raises one assignment of error for our review.

### Assignment of Error

**The Trial Court abused its discretion by vesting the care, custody, maintenance, and control of the parties' minor child with the Plaintiff-Mother.**

{¶14} In his assignment of error, although it is unclear, it appears that David is arguing that the trial court abused its discretion by (1) designating Tiffany as M.M.'s legal and residential custodian, (2) denying David's shared parenting request, and (3) reducing his parenting time with M.M. Specifically, David argues that the trial court's decisions were not in M.M.'s best interest because Tiffany's admission of "initiating [her] minor son into illegal drug usage" was more significant than David's "alleged conduct of domestic violence four-years prior." (Appellant's Brief at 9, 11). We will address together David's first and second arguments because the statute combines those issues, followed by his third argument.

**{¶15}** "Revised Code 3109.04 governs the trial court's award of parental rights and responsibilities." *August v. August*, 3d Dist. Hancock No. 5-13-26, 2014-Ohio-3986, ¶ 22, citing *King v. King*, 3d Dist. Union No. 14-11-23, 2012-Ohio-1586, ¶ 8. "The statute requires that in allocating the parental rights and responsibilities, the court 'shall take into account that which would be in the best interest of the child[].'" *Id.*, citing *Self v. Turner*, 3d Dist. Mercer No. 10-06-07, 2006-Ohio-6197, ¶ 6, quoting R.C. 3109.04(B)(1). "It further provides for options available to the trial court when allocating parental rights and responsibilities: 'primarily to one of the parents' (R.C. 3109.04(A)(1)), or 'to both parents' (R.C. 3109.04(A)(2))." *Id.*, citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, ¶ 23-24 and R.C. 3109.04(A), (D), (F), (G). "Under R.C. 3109.04(D)(1)(a)(iii), where, as here, 'only one parent makes a request' for shared parenting and the trial court determines that shared parenting is not in the best interest of the child, the trial court may deny a party's motion requesting shared parenting and proceed as if the request for shared parenting had not been made." *Id.*

**{¶16}** "Where neither party files a pleading or motion requesting shared parenting in accordance with R.C. 3109.04(G)," or where the trial court concludes that a shared parenting plan is not in the best interest of the child,

"the [trial] court, in a manner consistent with the best interest of the child[], shall allocate the parental rights and responsibilities for the care of the child[] primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the child[], including, but not limited to, the responsibility to provide support for the child[] and the right of the parent who is not the residential parent to have continuing contact with the child[]."

*Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 48, quoting R.C. 3109.04(A)(1) and citing *Frey v. Frey*, 3d Dist. Hancock No. 5-06-36, 2007-Ohio-2991, ¶ 28.

{¶17} "Further subsections of [R.C. 3109.04] spell out ten factors that the court shall consider to determine the best interest of the child, and five more factors to determine whether shared parenting is in the child's best interest." *August* at ¶ 23, citing R.C. 3109.04(F)(1) and (2). "Any additional relevant factors shall be considered as well." *Id.*, citing R.C. 3109.04(F)(1) and (2).

"In determining the best interest of a child [under R.C. 3109.04], whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree

-7-

allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent

pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and

whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

*Id.*, quoting R.C. 3109.04(F)(1).

In determining whether shared parenting is in the best interest of the child[], the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c)   Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d)   The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e)   The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

*Id.*, quoting R.C. 3109.04(F)(2).

**{¶18}** "'Decisions concerning child custody matters rest within the sound discretion of the trial court.'" *Krill v. Krill*, 3d Dist. Defiance No. 4-13-15, 2014-Ohio-2577, ¶ 26, quoting *Walker*, 2013-Ohio-1496, at ¶ 46, citing *Wallace v. Willoughby*, 3d Dist. Shelby No. 17-10-15, 2011-Ohio-3008, ¶ 22 and *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). "'"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."'" *Id.*, quoting *Walker* at ¶ 46, quoting *Barto v. Barto*, 3d Dist. Hancock No. 5-08-14, 2008-Ohio-5538, ¶ 25 and *Bechtol v. Bechtol*, 49 Ohio St.3d 21 (1990), syllabus. "'Accordingly, an abuse of discretion must be found in order to reverse the trial court's award of child custody.'" *Id.*, quoting *Walker* at ¶ 46, citing *Barto* at ¶ 25 and *Masters v. Masters*, 69 Ohio St.3d 83, 85 (1994). "'An abuse of discretion suggests the trial court's decision is unreasonable or

unconscionable.'" *Id.*, quoting *Brammer v. Meachem*, 3d Dist. Marion No. 9-10-43, 2011-Ohio-519, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶19}** "The trial court 'has discretion in determining which factors are relevant,' and 'each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.'" *Id.* at ¶ 29, quoting *Brammer v. Brammer*, 3d Dist. Marion No. 9-12-57, 2013-Ohio-2843, ¶ 41, citing *Hammond v. Harm*, 9th Dist. Summit No. 23993, 2008-Ohio-2310, ¶ 51. "A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody." *Brammer* at ¶ 41, citing *Shaffer v. Shaffer,* 3d Dist. Paulding No. 11-04-22, 2005-Ohio-3884, ¶ 20. "Although the trial court must consider all relevant factors, there is no requirement that the trial court set out an analysis for each of the factors in its judgment entry, so long as the judgment entry is supported by some competent, credible evidence." *Krill* at ¶ 29, citing *Meachem* at ¶ 30, citing *Portentoso v. Portentoso*, 3d Dist. Seneca No. 13-07-03, 2007-Ohio-5770, ¶ 22. "'[A]bsent evidence to the contrary, an appellate court will presume the trial court considered all of the relevant "best interest" factors listed in R.C. 3109.04(F)(1).'" *Meachem* at ¶ 32, quoting *Goodman v. Goodman*, 3d Dist. Marion No. 9-04-37, 2005-Ohio-1091, ¶ 18.

**{¶20}** "Additionally, we note that the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony." *Id.* at ¶ 20, citing *Clark v. Clark*, 3d Dist. Union No. 14-06-56, 2007-Ohio-5771, ¶ 23, citing *In re Brown*, 98 Ohio App.3d 337 (3d Dist.1994). "Therefore, '"[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not."'" *Id.*, quoting *Clark* at ¶ 23, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 81 (1984).

**{¶21}** First, after reviewing the relevant R.C. 3109.04(F)(1) and (2) factors, the magistrate and trial court concluded that shared parenting is not in M.M.'s best interest and that it is in M.M.'s best interest that Tiffany have residential and legal custody of M.M.

**{¶22}** In his August 7, 2014 decision, the magistrate specifically stated that he considered the R.C. 3109.04 factors in concluding that shared parenting is not in M.M.'s best interest and that it is in M.M.'s best interest that Tiffany have residential and legal custody of M.M. In particular, the magistrate found that "[t]here is substantial, credible evidence to indicate that David has committed acts of domestic violence against Tiffany during the course of their marriage." (Doc.

No. 134).  In support of his finding, the magistrate noted that a civil protection order was granted on September 1, 2010 to protect Tiffany from David and that David was convicted of two counts of telephone harassment against Tiffany for which he was sentenced to 30 days in jail. (*Id.*, citing Plaintiff's Ex. 8(a)).  After he was released from jail, David was convicted of further acts of harassment against Tiffany for which he received 110 days in jail.  (*Id.*, citing Plaintiff's Ex. 8(c)).  The magistrate found that M.M. is  "doing well" in Tiffany's care and that Tiffany provides for M.M.'s day-to-day needs, including taking M.M. to the doctor, buying her clothing, bathing her, and preparing her meals.  The magistrate found that Tiffany's family lives nearby and provides Tiffany support in taking care of M.M.  Also, the magistrate found that M.M. has a close relationship with her maternal grandparents.  While the magistrate noted that Tiffany's admission that she smoked marijuana with her minor son demonstrated poor judgment, the magistrate found that it was an isolated incident that occurred two years before and that Tiffany's son is on the honor roll at school.  The magistrate further found that David and Tiffany's communication is "very poor" and that David has demonstrated "a lack of concern for following court orders[, which] appears to be the biggest reason for his lengthy incarceration."  (*Id.*).

{¶23} In its March 17, 2015 decision overruling David's objections to the magistrate's decision, the trial court, after an independent analysis of the R.C.

3109.04 factors, also concluded that shared parenting is not in M.M.'s best interest and that it is in M.M.'s best interest that Tiffany have residential and legal custody of M.M. In particular, while the trial court found the conduct of both David and Tiffany troubling, the trial court found the following R.C. 3109.04(F)(1) factors relevant to its decision: R.C. 3109.04(F)(1)(a), both David and Tiffany wished to be M.M.'s residential parent; R.C. 3109.04(F)(1)(c), M.M. has a good relationship with both David and Tiffany and her siblings in Tiffany's home; R.C. 3109.04(F)(1)(d), M.M. is well adjusted and well taken care of in Tiffany's home; R.C. 3109.04(F)(1)(f), David has a history of violating the law and court orders, which suggests that he will be less likely to honor and facilitate court-approved parenting time; R.C. 3109.04(F)(1)(h), David was convicted of offenses—disorderly conduct, amended from domestic violence, and telephone harassment of Tiffany—involving a victim, who, at the time of the commission of the offense, was a member of the family or household; and R.C. 3109.04(F)(1)(i), there is no evidence that Tiffany, M.M.'s current residential parent, denied David parenting time. (Doc. No. 184).

{¶24} The trial court also found that M.M. resided with Tiffany since David and Tiffany's separation and that Tiffany established herself as M.M.'s primary caregiver. The trial court found that M.M. is "well taken care of by Tiffany." (*Id.*). The trial court further found that Tiffany is able to provide M.M. a

"suitable" physical environment and that M.M. has a strong support group of relatives and friends in Tiffany's care. (*Id.*). While the trial court found Tiffany's "former use of marijuana and the permitting of her son's use of marijuana" to be "[t]he primary detractive factor" against her, the trial court found David's behavior to weigh more heavily against him. (*Id.*).

{¶25} Challenging the trial court's decision, David appears to assert that either shared parenting or he being named M.M.'s legal and residential custodian should have been granted because Tiffany's admitted use of, and permitting her son to use, marijuana outweighed David's disorderly conduct conviction, which was amended from a charge of domestic violence. However, David's disorderly conduct conviction is not the only factor on which the trial court relied in concluding that shared parenting is not in M.M.'s best interest and that it is in M.M.'s best interest that Tiffany have residential and legal custody of M.M. Instead, the trial court examined the care M.M. is receiving with Tiffany and the physical environment to which M.M. is exposed in Tiffany's care *in addition to* David's and Tiffany's conduct. In particular, the trial court, which is in the best position to observe the witnesses, weigh evidence, and evaluate testimony, analyzed,

> This court finds troubling Tiffany's marijuana use and, in particular,
>
> her apparent support of her seventeen-year-old son's marijuana use.

On the other hand, this court finds even more troubling the conduct of David. Whether or not he was actually convicted of a domestic violence charge, the evidence is clear that David has a history of violence against women. Further, the evidence demonstrates other criminal activity on the part of David in the form of telephone harassment charges that resulted in significant incarceration.

(*Id.*). David's argument that the trial court should have put more weight on Tiffany's admission as opposed to his disorderly conduct conviction has no merit. The trial court was in the best position to observe the parties during the proceedings, and the record supports the trial court's findings regarding David's conduct. (*See* Plaintiff's Exs. 8(a), 8(b), 8(c), 8(d), 8(e), 8(f), 8(g)). The trial court's best-interest findings are supported by some competent, credible evidence. Thus, the trial court did not abuse its discretion by concluding that shared parenting is not in M.M.'s best interest and that it is in M.M.'s best interest that Tiffany have residential and legal custody of M.M.

{¶26} Next, David argues that the trial court abused its discretion by reducing his parenting time with M.M. R.C. 3109.051 governs visitation rights of non-residential parents and provides, in pertinent part:

"If a divorce * * * proceeding involves a child and if the court has not issued a shared parenting decree, the court * * *, in accordance

with division (C) of this section, shall make a just and reasonable order or decree permitting each parent who is not the residential parent to have parenting time with the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest of the child to permit that parent to have parenting time with the child and includes in the journal its findings of fact and conclusions of law. Whenever possible, the order or decree permitting the parenting time shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child."

*Walton v. Walton*, 3d Dist. Union No. 14-10-21, 2011-Ohio-2847, ¶ 21, quoting R.C. 3109.051(A). *See also Braatz v. Braatz*, 85 Ohio St.3d 40, 44-45 (1999).

To determine whether a parenting schedule is in the child's best interest, R.C. 3109.051(D) directs the trial court to consider the following factors, in part:

"(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, and with the person who requested companionship or

visitation if that person is not a parent, sibling, or relative of the child;

(2) The geographical location of the residence of each parent and the distance between those residences, and if the person is not a parent, the geographical location of that person's residence and the distance between that person's residence and the child's residence;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

* * *

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(12) In relation to requested companionship or visitation by a person other than a parent, * * * whether either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of an offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that the person has acted in a manner resulting in a child being an abused child or a neglected child;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

* * *

(16) Any other factor in the best interest of the child."

*Walton* at ¶ 21, quoting R.C. 3109.051(D).

-20-

**{¶27}** "A trial court's establishment of a non-residential parent's [parenting-time] rights is within its sound discretion and will not be disturbed on appeal absent a showing of an abuse of discretion." *Id.* at ¶ 19, citing *Fordham v. Fordham*, 3d Dist. Logan No. 8-08-17, 2009-Ohio-1915, ¶ 18, citing *Elson v. Elson*, 3d Dist. Shelby No. 17-04-16, 2005-Ohio-3228, ¶ 11, citing *Appleby v. Appleby*, 24 Ohio St.3d 39, 41 (1986); *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). "The trial court's discretion over [parenting time] in this situation is broader than the court's discretion regarding child custody matters." *Walton* at ¶ 19, citing *Elson* at ¶ 11, citing *State ex rel. Scordato v. George*, 65 Ohio St.2d 128 (1981). "Furthermore, the trial court must exercise its discretion in the best interest of the child." *Id.*, citing *Bodine v. Bodine*, 38 Ohio App.3d 173, 175 (1988).

**{¶28}** In his August 7, 2014 decision, the magistrate specifically stated that he considered the R.C. 3109.051 factors in recommending parenting time for David. In particular, with respect to R.C. 3109.051(D)(1), the magistrate found that M.M. has a positive relationship with David and that relationship should be encouraged. (Doc. No. 134). The magistrate further found that David's residence provides "suitable accommodations" for M.M. (*Id.*). However, the magistrate noted that he "has some concerns about David being able to follow the orders of this court." (*Id.*). Furthermore, the magistrate acknowledged that the parties had

an agreed temporary order providing David parenting time with M.M. every Tuesday and Thursday overnight from 7:00 p.m. until the next morning and alternating weekends under Loc.R. 22. (*Id.*). Yet, the magistrate noted Tiffany's concerns regarding David's care of M.M.—namely, that David does not buy the correct size pull-ups for M.M.; that David preaches to M.M. about "godly issues"; that David has anger and mental-stability issues; that David has not properly dressed M.M. for the weather; that David does not provide proper hygiene for M.M.; and whether David will follow orders of the court because David "does not always pickup or return the child as ordered." (*Id.*). Nonetheless, the magistrate found that there is no evidence in the record to indicate that David has done anything "wrong" to M.M. (*Id.*). The magistrate noted that David requested the same parenting time with M.M. as provided by the agreed temporary order and that Tiffany requested that "David's weeknight visits on Tuesday and Thursday evening be limited to 5:00 p.m. to 8:00 p.m. each of those two nights, and overnight visits should be restricted to every other weekend." (*Id.*). After weighing the best-interest factors, the magistrate concluded that David should have parenting time with M.M. overnight on Tuesdays from 7:00 p.m. until he drops M.M. off on his way to work the following morning; Thursdays from 5:00 p.m. until 8:00 p.m.; and alternating weekends and summer vacation as provided by Loc.R. 22. (*Id.*).

**{¶29}** As we stated above, the trial court found the following best-interest factors, many of which overlap with the R.C. 3109.04 factors:

> The physical environment for [M.M.] is suitable, there is a strong support group of grandparents and friends and [Tiffany] has established herself as the primary caregiver and [M.M.] is well taken care of by Tiffany. The primary detractive factor for [Tiffany] is her former use of marijuana and the permitting of her son's use of marijuana.
>
> David also has significant issues. He has demonstrated over the years anger and rage issues and criminal behavior. His conduct has resulted in periods of incarceration and the issuance of civil protection orders.

(Doc. No. 184).

Nevertheless, David proposes that the trial court abused its discretion when it ordered that all provisions of the magistrate's Decision not pertaining to parental rights and responsibilities be adopted as suggested by the Magistrate who oversaw the trial. However, he down-graded the visitation time the child should have with her father * * *.

(Appellant's Brief at 8). David is correct that the trial court adopted all provisions of the magistrate's decision not pertaining to parental rights and responsibilities—that is, provisions pertaining to shared parenting of M.M., M.M.'s legal and residential custodian, and parenting time with M.M. In doing so, as we stated above, the trial court considered the R.C. 3109.04 best interests factors. However, the trial court concluded that M.M.'s best interests are better served through a parenting-time schedule in accordance with Loc.R.22 than the parenting-time schedule proposed by the magistrate.

{¶30} As the First District Court of Appeals contemplated in *In re Ross*, "the record does not demonstrate that the trial court ignored the magistrate's findings of fact. The [trial] court simply disagreed with the magistrate's proposed parenting-time schedule." 154 Ohio App.3d 1, 2003-Ohio-4419, ¶ 8 (1st Dist.). "The trial court, in reviewing the magistrate's decision, may adopt or reject the decision in whole or in part and may make modifications to the decision." *Hewitt v. Hewitt*, 3d Dist. Union No. 14-08-48, 2009-Ohio-6525, ¶ 46, citing Juv.R. 40(D)(4)(b). "Additionally, when ruling on objections to the magistrate's decision, the trial court must 'undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.'" *Id.*, quoting Juv.R. 40(D)(4)(d) and citing *In re C.M.*, 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 7. "The [trial] court, after

reviewing the record before the magistrate, is free to disagree with the magistrate's conclusions and to enter an order it finds to be in the child's best interest. *In re Ross* at ¶ 8, citing *In re Etter*, 134 Ohio App.3d 484 (1st Dist.1998) and *In re Wooldridge*, 1st Dist. Hamilton No. C-980545, 1999 WL 650615 (Aug. 27, 1999). The trial court has broad discretion in determining a parenting-time schedule that is just and reasonable. *Walton*, 2011-Ohio-2847, at ¶ 19. After reviewing the record and the magistrate's findings and recommendation, the trial court concluded that M.M.'s best interest is better served through a parenting-time schedule as provided by Loc.R. 22. The trial court did not abuse its discretion by rejecting the magistrate's proposed parenting-time schedule and adopting its own parenting-time schedule because the trial court's best-interest determination is supported by some competent, credible evidence and is just and reasonable. *See id.*

{¶31} David's assignment of error is overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**